IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. MEIS, D.O., III : | |
| : | CIVIL ACTION |
| v. : | |
| : | |
| : | NO.  24-966 |
| ARIA HEALTH PHYSICIAN : | |
| SERVICES : | |

**OPINION**

## I. INTRODUCTION

Plaintiff Dr. William J. Meis ("Plaintiff") claims he was discriminated against on the basis of his age and a perceived disability when Defendant Aria Health Physician Services ("Defendant") terminated his employment as a surgeon. Defendant responds that Plaintiff was terminated pursuant to a company-wide downsizing effort and that Plaintiff was selected for termination due to his individualized productivity statistics, which were near the very bottom of the practice group.

Before the Court is a Motion for Summary Judgment (the "Motion" at Dkt. #46) of Defendant Aria Health Physician Services ("Defendant"). This Court finds that Plaintiff's paltry productivity constitutes a legitimate, non-discriminatory reason for termination which Defendant has raised and of which Defendant has provided sufficient evidence. For that reason, the burden has shifted back to Plaintiff to provide enough evidence that a reasonable factfinder could conclude that reason is pretext. This Court holds that Plaintiff has not met that burden with respect to his

1

age discrimination claims. By contrast, Plaintiff has carried his burden with respect to his disability discrimination claims. Plaintiff can point to Defendant's own PowerPoint presentation which states a challenge facing Defendant is "[Plaintiff] reduced due to medical issue" with a resulting action item "Recruiting new surgeon to replace [Plaintiff]." The Court concludes that Plaintiff has carried his burden with respect to the disability discrimination claim.

## II. Factual Record

The Court finds that the following facts are not subject to genuine dispute.[1] Plaintiff, Dr. William Meis, was employed by Defendant as a vascular surgeon since his private practice was acquired by Aria Health in 2015. (Dkt. #27 at ¶¶ 23-25). Facing financial difficulties, Defendant's parent company assigned Ronald Kumor, its Vice President, the task of closing a budget gap of approximately $20 million with respect to Jefferson Health North. (Dkt. #46-1 at ¶ 2, 3). In order to close this gap, Kumor was charged with, *inter alia*, cutting expenses by terminating less productive

---

[1] The factual citations here are to Defendant's Statement of Undisputed Material Facts. (Dkt. #46-1). Plaintiff purports to deny some of these factual allegations. Some denials are denials with no contradictory facts at all. Others are summary denials followed by additional context or explanations which Plaintiff hoped may cast the fact in a different light. For the sake of clarity, to the extent any factual assertion from Defendant's Statement cited by this Court was denied in Plaintiff's responsive statement, the Court has carefully reviewed and overruled Plaintiff's denials if that denial is inconsistent with the factual basis for which the Court cites it. The basis for overruling the denials is twofold; that either: 1) no counter statement of facts was presented; or 2) this Court did not find the additional facts pleaded to be relevant for the purposes for which they were cited. This Court does not rely on any factual assertion about which the Court has found a genuine dispute of material facts.

employees. (*Id.* at ¶¶ 3-5). Mr. Kumor has sworn that as part of the process of cutting costs, he considered physicians whose Relative Value Units ("RVUs") were in the bottom 25% for termination. (*Id.* at ¶ 11). Mr. Kumor conducted this process in conjunction with Dr. Mohammad Khan, Jefferson Health Network's Chief of Surgery. (*Id.*).

In recent years working for Defendant, Plaintiff has utilized less than 50% of his available surgery time. (*Id.* at ¶¶ 21, 24). Meanwhile, Plaintiff's most similarly-situated colleague and former partner in private practice, Dr. Jan Olenginski was utilizing almost 63% of his available surgery time. (*Id.* at ¶ 26). In fiscal year 2023, Plaintiff's RVU productivity was below the 10th percentile. (*Id.* at ¶ 40).

Based on these statistics, Dr. Khan informed Mr. Kumor that his opinion was that Plaintiff did not have a path to improved productivity, particularly given Dr. Khan's assessment that Plaintiff's skills did not hold up to Defendant's present medical requirements and that he did not have the opportunity for growth if moved to another location. (*Id.* at ¶ 30). For example, Plaintiff did not have privileges to perform Carotid Artery Stenting at Jefferson. (*Id.* at ¶ 52). In contrast, Dr. Lisa Pedvillano, who was hired in April 2023 for a vascular surgery position, had privileges to perform that procedure. (*Id.* at ¶ 54). So too, as to Dr. Mark Balceniuk, who was hired as a vascular surgeon in July of 2022. (*Id.* at ¶¶ 50, 54). Both Dr. Pedvillano and Dr. Balceniuk are younger than Plaintiff. But Dr. Khan testified by declaration that Plaintiff's inability to perform this procedure was a significant factor

in assessing that Plaintiff's prospects for growth were limited and that he would not be the right choice for relocation to positions at other hospitals. (*Id.* at ¶ 55).

In May 2023, Mr. Kumor made the decision to terminate Plaintiff's employment as part of the cost cutting measures. (*Id.* at ¶¶ 40-41). A total of 11 physicians were terminated as part of this process. (*Id.* at ¶ 47). The ages of the terminated underperforming physicians varied greatly. (*Id.* at ¶ 48). Physicians as young as 31 and as old as 77 were terminated in this process. (*Id.*). There is no record evidence which calls into question whether Defendant possessed impermissible motives as to these physicians and no suggestion of it by Plaintiff.

Prior to Plaintiff's termination, in February of 2023, Carolyn Frey, Jefferson's Director of Finance, authored a slide in a PowerPoint presentation which was dated March 22, 2023 and entitled "Operational Performance Review North Region." (*Id.* at ¶ 62-63). The slide was created at the direction of Richard Galup, Chief Operating Officer of Jefferson. (*Id.* at ¶¶ 3, 63). Under "Challenges," this slide says "Meis reduced due to medical issue." (*Id.* at ¶ 63). The corresponding "Action Plan" says "Recruiting new surgeon to replace Meis." (*Id.*). Ms. Frey testified that the phrase "Meis reduced" actually meant that his volume was reduced compared to budget." (*Id.* at ¶¶ 64-65). Ms. Frey also testified that she has no memory of the source of this information. (*Id.* at ¶ 77).

Mr. Galup testified that the phrase "Meis reduced" means the Meis's volume is not in the surgical volume number. (*Id.* at ¶ 78). Mr. Galup was aware that Plaintiff had a previous medical issue which required Defendant to get surgical coverage for

4

him at its hospital. (*Id.* at ¶¶ 82-83). Ms. Frey and Ms. Galup both testified that this language was not a reference to Plaintiff's prior medical issues. (*Id.* at ¶¶ 81-84). Both Dr. Khan and Mr. Kumor received these slides, though both testified they do not remember it. (*Id.* at ¶¶ 87, 89).

### III.    Legal Standards

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Mann v. Palmerton Area School District*, 872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation marks omitted). A fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party moving under Rule 56 "bears the burden of demonstrating the absence of any genuine issues of material fact.  When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820-821 (3d Cir. 2006) (citations and internal quotation marks omitted).

The movant's initial burden does not relieve complainant's obligation of producing evidence that would support a jury verdict. *Anderson*, 477 U.S. at 256. Because a motion for summary judgment looks beyond the pleadings, the opposing

party must advance specific facts showing that there is a genuine factual dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F.Supp.2d 597, 598 (E.D. Pa. 2005). The non-movant may not rest on their pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. If the "evidence presented by the non-movant is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250.

After a plaintiff has established their *prima facie* case under each of the Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA"),[2] the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for that hiring decision. *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644-45 (3d Cir. 2015) (laying out burden shifting framework for ADEA); *see also id.* at 643 ("There is no need to differentiate between ADEA and PHRA claims because the same analysis is used for both.") (cleaned up); *Henley v. Brandywine Hosp., LLC*, No. CV 18-4520, 2019 WL 3326041, at *12 (E.D. Pa. July 24, 2019) (Baylson, J.) ("Disability discrimination claims under the ADA are subject to the same burden-shifting framework as race discrimination claims under § 1981, Title VII, and the PHRA."). Because Defendant does not contest that Plaintiff can carry the burden of his *prima*

---

[2] For purposes of the Motion, Defendant concedes that Plaintiff can do so.

*facie* case, this Court will not recite the elements of such at length. However, the Court will observe that the statutes which permit disability discrimination claims allow claims for what is called "regarded-as" disability. That theory of liability allows someone who is not disabled to prevail on a disability discrimination claim if their employer *believed* they were disabled and discriminated against them based on that belief.

"The defendant satisfies its burden at this step by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable action." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (cleaned up). "The defendant need not even prove that the tendered reason was the actual reason for its behavior." *Id.* After the defendants shifts the burden back to the plaintiff, "a plaintiff may defeat a motion for summary judgment by either discrediting the defendant's proffered reasons or adducing evidence that discrimination was more likely than not a determinative cause of the adverse action." *Id.* (cleaned up). Importantly, this Court is not permitted to second guess the wisdom of legitimate business decisions. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 468 (3d Cir. 2005).

## IV. Analysis

### A. Age Discrimination Claims

The Court will begin by analyzing Plaintiff's claims for age discrimination. As mentioned above, the Defendant concedes for purposes of this Motion that Plaintiff can establish his *prima facie* case for age discrimination. So the Court's first

7

responsibility is to examine its stated legitimate, non-discriminatory reasons ("LNDR") for terminating Plaintiff.

While there are several pieces of the LNDR pleaded, they all fit roughly into a single fact pattern. Defendant- facing a financial crisis- had to close locations and terminate staff in order to maintain its financial health. (Dkt. #46-1 at ¶¶ 1-4). As a result, Defendant chose to close the Frankford Operating Room, where Plaintiff was stationed, to all but podiatry surgeries. (*Id.* at ¶ 34). It is also undisputed that Defendant assessed its physicians who were in the bottom 25% in productivity as measured by RVUs (defined *supra*). Further, it is undisputed that Plaintiff was in the bottom 10% of productivity by that measure. Defendant has also put forth unrebutted evidence that shows Plaintiff lacked privileges to perform a carotid artery stenting at a Jefferson. (*Id.* at ¶¶ 51-52). This Court finds these are self-evidently reasonable reasons to terminate Plaintiff's employment in the context of broad cost-cutting measures.

Therefore, the burden has shifted to Plaintiff to prove that these reasons were pretextual. "This is a higher hurdle than the initial burden to establish a *prima facie* case because to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Pierce v. PECO Energy Co.*, No. CV 19-4073, 2021 WL 4458955, at *6 (E.D. Pa. Sept. 29, 2021). Because the proffered LNDR is so strong

here and the record is replete with contemporaneous factual support for it, this Court will require correspondingly strong evidence of pretext.[3] Plaintiff brings forward ten arguments as to why Defendant's LNDRs are pretextual. This Court will first consider them in the context of Plaintiff's claims for discrimination on the basis of age.

Plaintiff's first argument as to why Defendant's stated reason is pretext is that Dr. Meis was not informed that he was subject to the RVU metric mentioned above. This argument is unpersuasive. Plaintiff does not dispute the accuracy of the data that Defendant considered and cannot seriously argue that productivity in general is not a legitimate standard by which an employer can lawfully determine which employee to terminate in the midst of financial restrictions. Further, there is no freestanding legal obligation for Defendant to keep Plaintiff apprised of his standing in key metrics- even if it may be wise to do so. If accepted, Plaintiff's argument would suggest nobody could be laid off by Defendant in response to the financial crisis without risking legal jeopardy unless they had already been subject to discipline or

---

[3] To be clear, this Court is not applying a heightened legal standard that Plaintiff must satisfy. Instead, the Court expresses a matter of common sense. If the proffered LNDR was something inane supported by little contemporaneous evidence, it logically would not take much evidence to convince a reasonable jury that the reason was pretextual. Where, as here, the proffered LNDR is supported by ample evidence and is objectively reasonable, it would take quite a bit more to convince a reasonable jury those reasons were pretext. This Court will still take all facts in a light most favorable to Plaintiff, will make all reasonable inferences in Plaintiff's favor, and will deny summary judgment if Plaintiff can create a genuine issue of material fact as to a claim.

9

coaching (despite an existential need to do so). That cannot be right, and Plaintiff cites no cases that support that conclusion.

Plaintiff's next pretext argument was that Defendant failed to notify Dr. Meis of any productivity deficiencies, allegedly violating Defendant's policy on notification of and coaching regarding workplace deficiencies. In support of his argument, Plaintiff cites to *Antol v. Perry*, 82 F.3d 1291, 1301 (3d Cir. 1996). In *Antol*, the Plaintiff brought a claim for disability discrimination based upon his employer's failure to adhere to a policy establishing an affirmative action program. *Id*. Because the failure to adhere to that policy was so clearly connected to the claim for discrimination, that failure was found to be probative of an improper motive behind the defendant's employment decision.

Plaintiff's citation to *Antol* misses the point. Dr. Meis was not fired in the routine course of business for lack of productivity, such that Defendant would have had time to coach him on his stats. Defendant here was making a time-sensitive decision that was compelled by cost cutting forced upon it. Here, the alleged policy violation had nothing to do with Plaintiff's age. In order to implicate *Antol*, Plaintiff here would have had to adduce evidence that showed Defendant had a policy requiring termination decisions to be made without reference to physicians' identities and failed to adhere to it. There is no such policy alleged, and therefore *Antol* does not apply.

Plaintiff's next argument is that Defendant reduced Plaintiff's surgical hours, which in turn lowered the metrics based upon which he was fired. But in so doing,

Plaintiff asks this Court to substitute its own business judgment for Defendant's and second guess Defendant's decision regarding how to distribute their available surgery time. *See Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].") (alterations in original). There is no evidence that this initial decision to reduce his hours was made with any animus based on age. For that reason, a reasonable fact finder would have no choice but to conclude that this threshold staffing decision was made for legitimate, non-discriminatory reasons.

Once that conclusion is reached, it is not difficult to conclude that Plaintiff's argument cannot establish pretext as to his termination. In the first instance, the undisputed factual record shows that Plaintiff was not even utilizing half of the allegedly-reduced operating room time which he was given. (Dkt. #46-1 at ¶ 24). For that reason, no reasonable factfinder could conclude this productivity would be higher if given more time; after all, he could not fill the time he already had available.

Even setting that aside, there is no genuine dispute that Defendant chose low performers in its metrics to terminate across the board, including those for whom there is no allegation that Defendant reduced hours unilaterally. Therefore, the allegedly reduced surgical hours are not probative of pretext. Plaintiff's argument here may at best suggest that termination based upon productivity was unkind as applied to him, but it cannot logically show that it was pretext. Plaintiff's argument

11

that he used to have a robust practice before his hours were reduced is unpersuasive for these same reasons.

Plaintiff's next argument for pretext is that Dr. Khan rated Plaintiff highly after his termination. That fact does not create a genuine issue of material fact as to pretext. Nobody claims that Plaintiff was terminated because he was a bad surgeon; rather, Defendant claims Plaintiff was terminated because he was unproductive and Defendant needed to downsize. The fact that Dr. Khan believes Plaintiff might thrive in another environment does not mean that his low productivity was a pretext to terminate him.

Plaintiff next argues the productivity explanation is pretextual because Defendant hired two younger vascular surgeons. The mere fact that these alleged replacements were younger cannot win the day. Comparator employees must be comparable in every relevant way. *Wilcher v. Postmaster Gen.,* 441 F. App'x 879, 882 (3d Cir. 2011). As Defendant points out, these surgeons were not similarly situated. The other surgeons who were hired had the ability to perform certain procedures that Plaintiff did not. The uncontroverted evidence of the decisionmaker in this case states that this was important. Plaintiff's assertions that *he* thinks the weight afforded to those procedures was too heavy does not undermine the sworn testimony by Defendant's witnesses that they viewed this issue differently. The Court once again refuses Plaintiff's invitation to substitute its own business (and medical) judgment for Defendant. Further, even if Plaintiff was medically correct that Defendant erroneously overweighed the importance of those procedures, such a finding could not

defeat a motion for summary judgment. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason, ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken[.]"); *see also Moye v. Verland Found.*, No. 2:21-CV-646, 2022 WL 3700665, at *6 (W.D. Pa. July 26, 2022) ("[T]he issue of pretext addresses whether an employer honestly believes the reasons it offered for an employee's termination, not the correctness or desirability of its reasons.").

Further, given Defendant's LNDR, it is also worth noting that Defendant already knew for certain that Plaintiff was an unproductive employee, and at least had reasons to suspect that the younger surgeons may perform better. For these reasons, they are not similarly situated in every relevant way, and therefore are not appropriate comparator employees.

Plaintiff next tries to create an inference of pretext by way of Defendant's retention of Dr. Jan Olenginski. Specifically, Plaintiff says that Dr. Olenginski hoarded patients and that Dr. Olenginski was previously disciplined for violating Defendant's procedures for dictation of patient notes. As to the alleged patient hoarding, that may well be a plausible explanation for why Plaintiff's RVU was so low, but it does nothing to convince a reasonable fact finder that Defendant's productivity LNDR was pretextual. That Defendant did not deeply investigate Plaintiff's myriad explanations as to his low productivity is not evidence that the reason itself was pretextual. Were the Court to rule otherwise, it would again be substituting its own business judgment for Defendant's.

As to the second argument regarding discipline to Dr. Olgensinski for insufficient note dictation, as Defendant rightly points out, Plaintiff was disciplined for activity that was much the same. (Dkt. #52 at 2-3).[4] And even if Plaintiff's conduct was factually distinguishable, any difference in misconduct does nothing to undermine Defendant's productivity LNDR. Defendant has not claimed here that Plaintiff was a bad doctor or followed the rules poorly. Defendant claims that Plaintiff was not productive. The fact that a retained doctor has some procedural discipline is simply not probative of pretext. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 647 (3d Cir. 1998).

Next, Plaintiff argues that evidence of pretext includes the fact that Plaintiff was the oldest and only vascular surgeon terminated. Plaintiff's age as compared to the non-terminated vascular surgeons was a necessary part of bearing his burden (conceded for this motion) in stating a *prima facie* case. Plaintiff, therefore, is essentially taking elements of his *prima facie* case and recasting them as proof of pretext. We have now moved on to the LNDR and pretext phase. Defendant has stated an LNDR: lack of productivity. Plaintiff now bears the burden to show that age was the cause of termination, not lack of productivity. In order to do that, the Plaintiff must either: (1) undermine the LNDR; or (2) show facts which could allow a reasonable factfinder to find it more likely than not that age discrimination was the but-for cause of the termination. If this Court were to say that Plaintiff establishes

---

[4]  This Court further agrees with Defendant that Plaintiff's failure to acknowledge his own discipline- even if distinguishable from Oleginski's- is disappointing.

pretext merely by reiterating his *prima facie* case, then the Court would be upsetting half of a century of *McDonell-Douglas* burden shifting. Plaintiff bears a heavier burden at this stage, and the fact that he is the oldest and only vascular surgeon terminated simply does not suffice.

Next, Plaintiff purports to identify shifts in Defendant's explanation for why Plaintiff was fired. If true, this would be powerful evidence of pretext. But here, Plaintiff's arguments once again fall short. Plaintiff attempts to differentiate the productivity rationale from other "wrinkles" such as Plaintiff's inability to perform carotid artery stenting and endovascular surgeries, poor marketing efforts, and out-of-date skills. But this Court does not find these to be at all inconsistent with Defendant's original productivity rationale. Rather, each of these fits neatly into that rationale as explanations for why Plaintiff was so unproductive.[5]

Finally, Plaintiff asserts that a PowerPoint presentation shows that Defendant already planned to terminate him before Defendant took steps to begin cutting costs and these slides therefore casts Defendant's LNDR into doubt. As will be explained *infra*, this Court agrees that these slides are probative of *an* inappropriate motivation. But not one based on age. These slides can be reasonably understood in at least two ways. The first is that Defendant was looking to replace Plaintiff because

---

[5] This argument falls apart when tested by hypothetical. If a manager was terminated for "being an ineffective leader," it would not be inconsistent or evidence of pretext if months of fact discovery led the employer to point more specifically at summary judgment to a dismissive attitude towards his reports and falling profits from his department. This Court need not reject a rationale which is entirely consistent with, and merely more specific than, the original one.

he was not productive. This interpretation is corroborative of the LNDR, as opposed to undermining it. The second way to interpret these slides is that Defendant was looking to replace Plaintiff because they believed he had a health impairment which caused decreased productivity. That has nothing to do with an age discrimination claim. No reasonable interpretation of this slide could support an age discrimination claim.

For the reasons explained above, Plaintiff cannot carry his burden to produce enough evidence from which a reasonable juror could conclude that Defendant's LNDR is pretextual. For that reason, his claims for age discrimination fail.

### B. Disability Discrimination Claim,

Plaintiff's case for disability discrimination play out a bit differently. As this Court noted *supra*, the PowerPoint slides which state "[Plaintiff] reduced due to medical issue" and "Recruiting new surgeon to replace [Plaintiff]" present powerful circumstantial evidence of pretext which prevents the award of summary judgment here. Despite Defendant's detailed instructions on how to read the slides, this Court cannot agree that Defendant presents the *only*- let alone the simplest- way to understand them. This Court finds it entirely reasonable for a fact finder to understand the slides to say that Plaintiff's productivity has been reduced because of a medical issue, and that Defendant intends to replace him for that reason.[6]

---

[6] It is further possible that even if this discriminatory meaning is what the slides meant, Defendant might be justified in terminating Plaintiff if he could not perform his essential job duties (including adequate productivity) with or without a reasonable accommodation. But Defendant would first have had to engage in an interactive process. Ironically, that interactive process would likely have led

16

The Court is unconvinced that summary judgment can still be granted based upon Mr. Kumor's self-serving testimony that while he received the slides, he did not review them. If credited by the finder of fact, testimony as to whether the decision maker actually understood Plaintiff to have a disability might even be dispositive. *Compare*: *Conklin v. ABEC, Inc.*, No. 2:24-CV-00857, 2025 WL 1208904, at *3 (E.D. Pa. Apr. 25, 2025) (Weilheimer, J.) (granting summary judgment where Plaintiff produced no evidence that decision-maker had knowledge of protected FMLA activity). But here, there *is* evidence from which a reasonable factfinder could conclude that Mr. Kumor, the decisionmaker, regarded Plaintiff as disabled, in that he received the slides and did not speak against them. Mr. Kumor may credibly testify at trial and convince the jury that he did not see the slides and did not regard Dr. Meis as disabled. But such a credibility determination is not for the Court to make at this stage.

Further, this comment cannot be dismissed, as Defendant requests, as a "stray remark." Far from a stray remark, these key phrases are included on an official PowerPoint produced for Defendant's upper management which address the core issues of the case. This is a core remark, central to Plaintiff's exact theory of liability. Just because it is the only such remark does not mean this Court must grant summary judgment.

---

Defendant to conclude that Plaintiff was not disabled and insulate it from legal liability for terminating Plaintiff. But such is the paradox of a "regarded as" disability claim.

17

All that remains, then is Defendant's arguments regarding failure to exhaust and untimeliness. Defendant points out that disability discrimination was not part of Plaintiff's complaint to the EEOC and that the time to bring such a claim in the first instance has expired. In response, Plaintiff argues that Judge Kenney's prior order permitting amendment of the complaint is now the law of the case as to timeliness, and that, if there is no law of the case, equitable tolling principles permit his claim to go forward. Defendant says that equitable tolling should not apply because there is no showing that it acted in misleading or self-concealing conduct.

As to the law of the case, this Court agrees with Defendant that there is no law of the case issue presented here regarding Judge Kenney's decision to permit leave to amend. That decision was made based on the limited information provided to Judge Kenney. Courts routinely deny motions to dismiss on a certain ground and later grant summary judgment when the factual record has been developed. But this Court does agree with Judge Kenney's rationale at that time, and believe it applies with equal force here. Based on the record evidence before it, this Court agrees that there is no reason to conclude that Plaintiff would have been on notice of his potential claims for as-regarded disability discrimination until the production of the PowerPoints at issue. Once he was on notice, Plaintiff proceeded expeditiously to pursue his claim.

The more difficult question with respect to the statute of limitations and failure to exhaust raised by Defendant is whether Defendant engaged in misleading or self-concealing conduct as required by the Third Circuit for equitable tolling purposes. *See Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018). This is another issue to be

determined at trial (and perhaps even an appropriate threshold jury interrogatory). A reasonable factfinder who reads the key PowerPoint the way the Court outlined above could find that Defendant's failure to engage in an interactive process paired with a stated reason for termination that Defendant secretly attributed to a perceived disability created a pattern of conduct designed to self-conceal or mislead. Summary judgment is inappropriate.[7]

## V. Conclusion

For the reasons explained above, each of the pretext arguments simply fails to create a genuine issue of material facts as to age discrimination. In contrast, the words used in the PowerPoint slide are a horse of different color and create triable issues as to disability discrimination. The Motion is granted as to Counts I and II. The Motions is denied as to Counts III and IV. An appropriate order follows.

DATED June 25, 2025            BY THE COURT:

_____
GAIL WEILHEIMER         J.

---

[7] As a final point of clarification. Although the Court has explained why Plaintiff's various pretext arguments fail to create a genuine issue of material fact as to age discrimination, because this Court finds the PowerPoint alone precludes summary judgment, this Court has not had occasion to pass judgment on whether some (and if so, which) of the pretext arguments may be relevant to the disability discrimination claims, which are buttressed by that fairly damning PowerPoint. Absent any indicia of age discrimination, failing to coach or communicate clearly about RVUs could not create a genuine issue of material fact. But in the shadow of the PowerPoint, that analysis may indeed differ as to disability discrimination. The Court will consider any motions *in limine* which may be filed. The Court's analysis above should not be construed as excluding any particular pretext theory as to disability discrimination.